

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ANDREW KELLY,

    Plaintiff,

v.                              Civil Action No. 3:12CV74

ABDUL JAMALUDEEN, et al.,

    Defendants.

**MEMORANDUM OPINION**

Andrew Kelly, a Virginia prisoner proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983[1] complaint. The matter is before the Court on Sheriff Kenneth W. Stolle's Motion to Dismiss (ECF No. 15) and Dr. Abdul Jamaludeen's and Nurse Donald Sadler's Motion for Summary Judgment. (ECF No. 28.) Defendants provided Kelly with appropriate Roseboro[2] notice. (ECF Nos. 17, 27.) Kelly has not responded. For the reasons set forth below, the Court will grant the Motion to Dismiss and the Motion for Summary Judgment.

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).



## I.  KELLY'S COMPLAINT

At all times relevant to the action, Kelly was incarcerated in the Virginia Beach Correctional Center ("VBCC").  (Compl. 4.)  Kelly alleges:

> Soon as I got in this institution a (cyst) formed on my wrist, or at least we think it's a (cyst). Doctor said he doesn't even know what it is.  Doctor (Jamaludeen experimented several times by draining it to try to get rid of it.  1st time drained a jelly substance came out, Doctor said he never seen anything like it before, but he would not even look at it under microscope or send to lab or anything.  (2nd time) It came right back [a] week [and] 1/2 later.  Doctor persisted to drain again, which he did (same thing again).  I came back [a] week [and] 1/2 later again while in mean time he keep telling me I'm on (outside medical waiting list), which usually . . . takes a few months (at most).  I've been waiting almost 5 months now.  So 3rd time it came back, Doctor came to drain again (w/ same nurses as usual) except 1 more by name (of Sadler) [and] Doctor wanted him to drain it.  I didn't feel comfortable, (Sadler) said he never done it before [and] I was in a lot of pain so I had no choice, I needed help so Doctor (Jamaludeen) instructed (Sadler) to drain[ ] it, then he did something wrong, like he hit a nerve, instant pain (bad).  I told him to stop, he just said "hold on" but it hurt too bad.  I just wanted him to stop.  He didn't, just continued, then took out needle [and] stuck it in a new spot.  It hurt bad!  I tried to take my hand back but deputies held me so he could finish even though I told him to stop because of pain, (plus) Doctor already said he didn't know what it was.  If it didn't work 1st, 2x, why keep experimenting on me?  I should have [and] still need to see a physician who know[s] what they are working on.  This was a form of malpractice and cruel punishment that has caused severe damage!  My hand turned yellow [and] black from bruising.  I have nerve damage, problem using my finger [and] right hand, it has taken me over a week to write this!  I need medical attention and I am being denied.

(Id. at 5 (capitalization, spelling, and punctuation corrected).) Kelly demands monetary damages. (Id. at 6.) The Court construes Kelly to raise the following Eighth Amendment[3] claims for relief:

Claim One:     Dr. Jamaludeen acted with deliberate indifference to Kelly's serious medical needs by providing ineffective treatment for Kelly's cyst.

Claim Two:     Dr. Jamaludeen acted with deliberate indifference to Kelly's serious medical needs by failing to promptly refer Kelly to a specialist.

Claim Three:   Nurse Sadler acted with deliberate indifference to Kelly's serious medical needs by subjecting Kelly to severe pain while treating the cyst.

## II. MOTION TO DISMISS

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Kelly fails to mention Stolle in the body of the Complaint, much less explain

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Stolle's personal involvement in the events for which Kelly seeks relief. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) (citing Brzozowski v. Randall, 281 F. Supp. 306, 312 (E.D. Pa. 1968)). Accordingly, Stolle's Motion to Dismiss (ECF No. 15) will be granted.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly

4

supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party."  United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)).  "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'"  Id. (quoting Munson, 81 U.S. at 448).  Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

5

In support of his Motion for Summary Judgment, Dr. Jamaludeen and Nurse Sadler submit the following pertinent evidence: declarations from Dr. Jamaludeen (Mem. Supp. Mot. Summ. J. Ex. 1 ("Jamaludeen Decl."), ECF No. 29-1) and Nurse Sadler (id. Ex. 2 ("Sadler Decl."),[4] ECF No. 29-2), and Kelly's medical records (Jamaludeen Decl. Ex. A, ECF No. 29-1).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Kelly did not respond to Jamaludeen's or Sadler's Motion for Summary Judgment. Additionally, Kelly's Complaint fails to constitute admissible evidence because Kelly did not swear to the contents of his submissions under penalty of perjury. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Kelly.

## IV.  SUMMARY OF FACTS

On April 4, 2011, Kelly sustained injuries after a car hit him and Chesapeake General Hospital discharged him with

---

[4]    Jamaludeen and Sadler submit declarations entitled "UNSWORN DECLARATION[S]," however, both are sworn to under penalty of perjury.

paresthesia[4] of the right hand and right foot, as well as right upper arm pain. (Jamaludeen Decl. ¶ 8.)   On April 26, 2011, Kelly began his incarceration at the VBCC.  (Id. ¶¶ 7, 9.)   On that date, based upon the discharge instructions from the hospital, Dr. Jamaludeen ordered the prescriptions Methocarbamol[5] and Naproxen for Kelly.  (Id. ¶ 9.)   On April 28, 2011, Dr. Jamaludeen assessed Kelly and noted the following: "'hit by auto April 4th seen in ER knocked unconscious now has numbness in legs, numbness in right arm and was given . . . muscle relaxers and pain meds.'"   (Id. ¶ 10.)   He also noted that Kelly had "'limited abduction of r[ight] arm to 70 degrees from resting decreased sensation of right forearm moves all 4 ext[remities].'"   (Id. (alteration in original).)   Dr. Jamaludeen found that Kelly had a "cervical radiculopathy and a soft tissue injury from the automobile accident" and ordered Methocarbamol 750mg two times a day and Acetaminophen 325mg three times a day.  (Id.)   On May 11, 2011, Dr. Jamaludeen

---

[4] The Court notes that WebMD defines paresthesia as "an abnormal sensation of tingling, numbness or burning" caused by sustained pressure placed on a nerve or nerve damage.  See WebMD answers,   http://answers.webmd.com/answers/1198510/what-is-paresthesia (last visited Dec. 3, 2013).  Counsel for Defendants are admonished that when relying on medical terms not readily understandable to the general reader, a definition of the medical term should be provided.

[5] Methacarbamol is used to treat muscle spasms and pain and helps to relax the muscles.  See WebMD answers, http://answers.webmd.com/answers/1085100/what-conditions-does-methocarbamol-treat?guid=3 (last visited Dec. 3, 2013).

. Case 3:12-cv-00074-REP   Document 30   Filed 12/18/13   Page 8 of 19 PageID# 304

ordered a refill for Kelly's Methocarbamol prescription. (Id. ¶ 11.)

During a segregation assessment on September 5, 2011, Kelly first complained of a problem with his wrist. (Id. ¶ 13.) He stated: "'I have this knot on my right wrist for a month now and it seems to be growing. It only hurts [when] you push or press on it.'" (Id.) Upon examination, it was noted that Kelly "had two knots on the inner part of his right wrist, with one more developed than the other. The bigger knot was noted to be soft and appeared to be tender to the touch by [Kelly's] reaction when the larger knot was touched. The smaller knot was noted to be firm." (Id.) On the same day, Kelly submitted a sick call request that stated: "'need to see doctor about my wrist, 2 big knots growing, swollen, hurts, and my ankles hurt, very bad.'" (Id. ¶ 14.) The medical department informed Kelly that he was placed on the list to see the physician assistant ("PA") on September 9, 2011. (Id.)

On September 9, 2011, Dr. Jamaludeen examined Kelly in response to Kelly's sick call request and found that Kelly had a "'large cyst over left radial artery tender to [palpitation].'" (Id. ¶ 15.) Dr. Jamaludeen noted for Kelly to "'consult with Dr. Hercules for opinion because cyst is so close to the radial artery'" and ordered 600mg of Motrin for pain. (Id.)

On September 16, 2011, Dr. Jamaludeen examined Kelly in response to his sick call request in which Kelly complained of swelling in his right wrist. (Id. ¶ 16.) Dr. Jamaludeen noted that Kelly was not in distress. (Id.) Dr. Jamaludeen removed 3ccs of jelly-like fluid from the cyst on Kelly's wrist and noted that no further treatment was needed. (Id.)

On September 28, 2011, Kelly submitted a sick call request that stated: "'need to see doctor about my wrist, I have a big growth [sic] hurts, very painful[,] can't move my hand because of the grow[th] on my wrist. Need to see doctor A.S.A.P.'" (Id. ¶ 17 (first and second alteration in original).) The PA examined Kelly on September 30, 2011. (Id. ¶ 18.) Kelly reported that he had "'ha[d] a growth on [his] wrist since May. The Dr. drained it once before and it came back within a week.'" (Id.) The PA noted that Kelly was in no acute distress, but had a "right wrist-fluctant mass that was very tender to palpitation" and that Kelly complained of pain when moving or flexing his wrist. (Id.) The PA noted "'Round Table Aspiration only lasts a few days-will be here for a few years[.] Add Motrin for pain.'" (Id.)[6] The PA scheduled a follow-up for the next week to review the results of the round table for Kelly's right wrist cyst. (Id.)

---

[6] The parties fail to provide a definition of the notation "Round Table Aspiration" and the Court failed to find a definition of the term.

On October 5, 2011, the medical department entered the following note on Kelly's chart: "'inmate request[ed] information about his wrist, inmate aware of round table meeting tomorrow, inmate also states his wrist still hurts . . . .'" (Id. ¶ 19.)

On October 7, 2011, Dr. Jamaludeen noted on Kelly's chart: "'Rt wrist swelling reoccurred after drainage, refer to outside medical.'" (Id. ¶ 20.) On October 10, 2011, Dr. Jamaludeen created a "task" for Kelly to be seen by an outside orthopedist. Dr. Jamaludeen explains that once he or the PA creates the "task" for an outside medical appointment, an administrative assistant schedules the appointment and he and the PA are no longer involved in the appointment process. (Id. ¶¶ 39-40.) Dr. Jamaludeen determined that Kelly should be referred to an orthopedist due to Kelly's continued complaint of pain even after draining the cyst. (Id. ¶ 40.)

On November, 1, 2011, Kelly submitted a sick call request stating: "'My wrist is swollen, very bad & very painful. Can I please be put on the next list to see the doctor A.S.A.P. (am in pain), my Motrin has also run out, but I need to see doctor!!!'" (Id. ¶ 21.) On November 4, 2011, Dr. Jamaludeen noted on Kelly's chart that "2 cc's [of] yellow jelly[-]like substance obtained from [Kelly's] right wrist." (Id. ¶ 22.)

10

On November 11, 2011, Kelly submitted a sick call request asking why he had not yet received Ibuprofen. (Id. ¶ 24.) In response, medical staff notified Kelly that he had been receiving Motrin. (Id.) On November 11, 2011, Dr. Jamaludeen ordered Ibuprofen 200mg three times a day for Kelly. (Id. ¶ 25.)

On December 2, 2011, Dr Jamaludeen noted on Kelly's chart that "'cyst on right wrist aspirated [and] a jelly[-]like substance 2 1/2 cc obtained.'" (Id. ¶ 26.)

On January 15, 18, 19, and 20, 2012, Kelly submitted sick call requests complaining about the cyst. (Id. ¶¶ 27-30.) The medical department informed Kelly in writing each time that an appointment with a physician had been scheduled. (Id.) On January 25, 2012, the medical department saw Kelly, checked his vital signs, and Kelly noted no complaints. (Id. ¶ 31.)

On February 7, 2012, the PA saw Kelly and noted that Kelly "'[was] wondering why he has never been to outside medical for cyst on his R wrist. Appt. was tasked back in October.'" (Id. ¶ 32.) The PA assessed that Kelly had a right wrist cyst "that was fluctuant and slightly tender to palpitation." (Id.) The PA noted that she would "'[r]efer [Kelly] to ortho. Appt. tasked 10-10-11'" and that she would "'find out from J. Feld what happened with appt.'" (Id.)

On February 9, 2012, Judith Feld entered a note on Kelly's chart stating that an "'appointment scheduled for ortho consult on 2/16/12.'" (Id. ¶ 33.)  On February 10, 2012, Feld completed a "'Conmed Healthcare Management Inc. Emergency Room/Specialist Referral'" form for Kelly in which she referred him to Atlantic Orthopedic Specialists for a consultation for the cyst on his right wrist. (Id. ¶ 34.)

On February 16, 2012, Kelly saw the outside orthopedist who diagnosed him with a right volar wrist ganglion. (Id. ¶ 35.) The orthopedist ordered the following:  "'[O]bserve only; no rx [prescriptions]; will ultimately likely resolve on own." (Id. (second alteration in original).)  On February 20, 2012, Dr. Jamaludeen reviewed and signed off on the orthopedist's diagnosis and recommendations. (Id.)

Nurse Sadler swears that he never provided any medical care or treatment to Kelly during his incarceration at the VBCC. (Sadler Decl. ¶ 6.)  Sadler observed Kelly on several occasions while he was housed in isolation, but he never provided medical care on those occasions. (Id.)  Nurse Sadler explains, as a nurse, that he has never drained a cyst or "performed any type of invasive procedure[,] nor would I ever do so." (Id. ¶ 7.)

## V.  ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Kelly must demonstrate that Dr. Jamaludeen and Nurse Sadler acted with deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

13

*Farmer*, 511 U.S. at 837.  *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate."  *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04).  Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference.  See *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A.   Ineffective Treatment

Kelly contends that Dr. Jamaludeen provided ineffective treatment for his cyst.  At the core of his claim, Kelly simply disagrees with the medical judgment of Dr. Jamaludeen concerning the appropriate treatment plan for Kelly's cyst.  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional

14

circumstances are alleged." <u>Wright</u>, 766 F.2d at 849 (citing <u>Gittlemacker</u>, 428 F.2d at 6). As explained below, Kelly fails to demonstrate any exceptional circumstances that would necessitate judicial review of Dr. Jamaludeen's clinical judgment.

The evidence establishes that Dr. Jamaludeen acted with no deliberate indifference. The record demonstrates Dr. Jamaludeen's responsiveness to Kelly's complaints and that Dr. Jamaludeen examined and treated Kelly many times for his wrist cyst. When Kelly first complained of wrist pain due to the cyst Dr. Jamaludeen prescribed medication for pain. (Jamaludeen Decl. ¶ 15.) When Kelly reported that he was experiencing swelling in his wrist, Dr. Jamaludeen removed fluid from the cyst and determined in his professional judgment that no further treatment was needed. (<u>Id.</u> ¶ 16.) When Dr. Jamaludeen again examined Kelly and determined that Kelly's wrist swelling reoccurred after the first drainage, he ordered a referral to a specialist. (<u>Id.</u> ¶ 20.) When Kelly continued to complain of swelling and pain, Dr. Jamaludeen twice drained fluid from the cyst and further prescribed pain medications. (<u>Id.</u> ¶¶ 22, 25-26.) Moreover, the specialist who examined Kelly prescribed no further treatment or medications other than observation of Kelly's wrist, and determined that the cyst would heal on its own. (<u>Id.</u> ¶ 35.) After the orthopedist's examination of Kelly,

Dr. Jamaludeen reviewed the specialist's diagnosis and orders. (Id.)

Because the evidence reflects that Dr. Jamaludeen provided reasonable medical care, rather than acting with deliberate indifference, Claim One will be dismissed.

### B.   Failure to Refer to a Specialist

Kelly also faults Dr. Jamaludeen for failing to refer him to an outside doctor when his wrist cyst had not improved after treatment. The evidence demonstrates that Dr. Jamaludeen entered a "task" for the administrative staff to make an appointment with an outside orthopedist on October 10, 2011. (Jamaludeen Decl. ¶ 40.) Dr. Jamaludeen explains that after creating a "task," he has no involvement in the appointment-making process. (Id.) At the time Kelly filed his Complaint on January 26, 2012, Kelly had not yet been seen by the orthopedist, however, he had an appointment with the orthopedist on February 16, 2012. (Compl. 6; Jamaludeen Decl. ¶ 40.) Thus, the Court generously construes Kelly to argue that Dr. Jamaludeen's delay in ordering treatment of his wrist cyst by the orthopedist amounted to deliberate indifference.

While a significant delay in the treatment of a serious medical condition may amount to an Eighth Amendment violation, a violation only occurs if the delay results in substantial harm. See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir 2008)

16

(citations omitted).   Thus, to survive summary judgment, Kelly must establish that the delay in referral to the orthopedist caused him substantial harm.   Id.   at   166-67.   "'[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"   Shabazz v. Prison Health Servs., Inc., No. 3:10CV190, 2012 WL 442270, at *5 (E.D.   Va.   Feb.   9,   2012)   (alteration   in   original)   (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).   Here, Kelly puts forth no evidence that the delay in referral itself caused him substantial harm.   Instead, when the orthopedist examined Kelly, he or she recommended no new treatment of the cyst, but ordered observation only, and noted that the cyst "'will ultimately likely resolve on own.'"   (Jamaludeen Decl. ¶ 35.)   Because Kelly fails to establish that the delay in referral itself caused him substantial harm, Claim Two will be dismissed.

### C.   Unnecessary Infliction of Pain

In his third claim, Kelly alleges that Nurse Sadler acted with deliberate indifference in draining his cyst On December 2, 2011.

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'"   Wright, 766 F.2d at 850 (quoting Vinnedge

17

v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore,
"'[t]he doctrine of respondeat superior has no application'"
under § 1983. Id. (quoting Vinnedge, 550 F.2d at 928). Kelly
must demonstrate that each defendant had "personal knowledge of
and involvement" in the alleged constitutional deprivation to
establish liability under § 1983. Id.

Nurse Sadler swears that he had no direct involvement in
Kelly's medical care, never provided treatment for Kelly during
his incarceration in the VBCC, and was not the individual who
drained Kelly's cyst. (Sadler Decl. ¶¶ 6-7.) Kelly directs the
Court to no evidence that refutes Nurse Sadler's statement that
he had no personal involvement in treating Kelly's cyst.
Furthermore, Kelly fails to direct the Court to any evidence
that demonstrates Nurse Sadler's personal involvement with
Kelly's medical care, much less any deliberate indifference when
providing such care. See Wright, 766 F.2d at 850. Accordingly,
Claim Three will be dismissed.[7]

---

[7] Kelly has neither specifically raised a claim against Dr.
Jamaludeen alleging inadequate supervision of the individual who
drained the cyst on December 2, 2011, nor have Defendants
addressed such a claim. To the extent that Kelly wishes to
bring such a claim, he must file a motion to amend accompanied
by an amended complaint within fifteen (15) days of the date of
entry hereof. Absent the appropriate motion to amend and
amended complaint, the Court will enter final judgment on the
action within fifteen (15) days of the date of entry hereof.

18

## V.   CONCLUSION

The Motion to Dismiss (ECF No. 15) and the Motion for Summary Judgment (ECF No. 28) will be granted.   Kelly's claims will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to Kelly and counsel of record.

                                    /s/   *REP*
                              _____
                              Robert E. Payne
                              Senior United States District Judge

Date: December 16, 2013
Richmond, Virginia